**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **NEIL ZACCARI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No.: **3:18-cv-00453-HEH** |
| ) | |
| **DISCOVER TECHNOLOGIES LLC** ) | |
| **Serve: David M. Truitt** ) | |
|     **11710 Plaza America Drive, Suite 110** ) | |
|     **Reston, Virginia 20190** ) | |
| ) | |
| **Defendant.** ) | |

**COMPLAINT**

Plaintiff, Neil Zaccari ("Zaccari"), by counsel, for its Complaint against Discover Technologies LLC ("DT"), alleges as follows:

**INTRODUCTION**

1. This litigation arises from the blatant infringement of Zaccari's copyrights in his independently created software which automated the inefficient and inaccurate review of government defense contracts by the Defense Contract Management Agency ("DCMA"). Zaccari was forced by his former employer, Apprio, Inc. ("Apprio"), and DCMA to give a copy of his software application to DCMA. Without Zaccari's authorization, DCMA then copied and installed his software application on thousands of computers across the agency. By DCMA's own admission, Zaccari's software application is saving the agency millions of dollars. DCMA, together with DT, also used the unauthorized copies of Zaccari's software application in a failed attempt to reverse engineer its efficient and highly effective capabilities. In addition to this complaint against DT, Zaccari is concurrently filing complaints against the United States in the

U.S. Court of Federal Claims and against Apprio in the U.S. District Court for the District of Columbia.

## PARTIES

2. Zaccari is a citizen of the Commonwealth of Virginia.

3. DT is a Virginia limited liability company whose principal place of business is located at 13241 Woodland Park Road, Suite 610, Herndon, Virginia 20171.

## JURISDICTION

4. This Court has subject matter jurisdiction over the copyright infringement claims in this action pursuant to 28 U.S.C. § 1338(a), supplemental jurisdiction of the state law claims in this action pursuant to 18 U.S.C. 1367(a), and over the trade secret misappropriation claims in this action pursuant to 18 U.S.C. § 1836(c).

5. This Court has personal jurisdiction over DT because DT transacts business in the Commonwealth of Virginia and is subject to jurisdiction under Va. Code § 8.01-328.1.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a), and Local Rule 3(C), because DT resides in and a substantial part of the events giving rise to the claims against DT occurred at DCMA's offices in this judicial district and division.

## FACTS

7. Zaccari is a certified Six Sigma Master Black Belt[1] business consultant with 30 years of experience.

---

[1] Six Sigma Master Black Belt is a rank assigned to the most experienced and effective Six Sigma expert practitioners who are generally responsible for creating portfolios of improvement projects for businesses, leading enterprise wide Six Sigma implementations, and training other Six Sigma practitioners.  *See*, *e.g.*, America Society of Quality Master Black Belt Certification Fact Sheet available at https://p.widencdn.net/lb4o6d/41577-Cert-Factsheet-MBB.

2

8. In 2008, Zaccari independently developed and wrote a software program using Microsoft Visual Basic for Applications ("VBA") that would search a document for user defined regulatory compliance terms, highlight those terms in the document, and then generate a report identifying the page number, line number, and associated regulatory compliance requirement (the "VBA Software").

9. In 2016, Zaccari independently developed and wrote a similar software program to automate a contract receipt and review process to identify Federal Acquisitions Requirements (the "CRR Software").

10. On April 23, 2018, Zaccari filed an application for his CRR Software, which was accepted by the U.S. Copyright Office, Reg. No. TXu 2-082-202. A copy of the Certificate of Registration is attached as <u>Exhibit 1</u>.

11. DCMA is the DoD component that works directly with defense contractors and suppliers to help ensure, among other things, that services and supplies are delivered on time, at projected cost, and meet all performance and Federal Acquisitions Requirements ("FAR") during the initial stages of the acquisition cycle and throughout the life of the resulting contracts. Before awarding a contract, DCMA assists with soliciting bids, selecting contractors and suppliers, and writing the contract. Once awarded, DCMA's contract receipt and review agents verify and monitor compliance with the requirements of the contracts and are tasked with identifying all applicable FAR.

12. According to a series of findings by the Governmental Accounting Office, however, DCMA was not capable of fulfilling its mission due to systematic failures in manually identifying critical FAR in its contracts.

13. In late 2015, Zaccari was hired by Apprio as a business process redesign consultant for the DCMA's Process Working Group ("PWG"). At that time, PWG was working closely with the Technology Program Management Office ("PMO"), which was developing an Integrated Workflow Management System ("IWMS"). Zaccari was tasked with sharing private sector process improvement best practices and to act as a Lean/Six Sigma coach.[2] Zaccari was not hired by Apprio or DCMA to develop or write any software. There were no provisions in Zaccari's task order that directed him to write or develop software.

14. Zaccari's primary customer was PWG, which was redesigning the agency's business processes. There were ten teams working on the business process redesign or re-engineering, called "BPR 1" through "BPR 10." BPR 1 was tasked with redesigning the agency's contract receipt and review process, which at that time was being done manually by DCMA's agents. Zaccari was not hired by Apprio or DCMA to work with BPR 1 to automate DCMA's antiquated contract receipt and review process.

15. Zaccari determined that, due primarily to noncollaboration between PMO and PWG, the IWMS was at a substantial risk for failure. On May 16, 2016, Zaccari, with the assistance of Major Michel Pottratz, verified the likelihood of failure by testing the processes being built in the IWMS. Major Pottratz concurred with Zaccari's conclusions about IWMS and reported them to PWG Director Nicolas Verna and IWMS Program Lead Antoine McNeil.

16. In May 2016, on his own time and initiative, using his own computer and software at his home, Zaccari developed and wrote his CRR Software based, in part, on his VBA Software. Zaccari's CRR Software code, as written, is substantially similar to his VBA Software, but had to

---

[2] Lean Six Sigma is a methodology that relies on a collaborative team effort to improve performance by systematically removing waste.

be modified to identify FAR. Zaccari's CRR Software automated the inefficient and ineffective contract receipt and review process DCMA's agents were doing manually. Zaccari was neither requested nor directed by anyone at Apprio or DCMA to develop or write his CRR Software.

17. On May 31, 2016, Zaccari demonstrated the automated search capabilities of his CRR Software to Apprio Vice President, Michelle Coelho, and fellow Apprio employee, Mary Sink. At that time, Zaccari informed Ms. Coelho and Ms. Sink that the automated search application in his VBA Software was developed prior to his employment with Apprio and that he desired to license his CRR Software to Apprio or DCMA. Ms. Coelho, in the presence of Ms. Sink, subsequently directed Zaccari to demonstrate his CRR Software to the BPR 1 team. Zaccari demonstrated to the BPR 1 team members, including Mary Hitt and Ms. Sink, that same day.

18. The following day, June 1, 2016, Zaccari demonstrated his CRR Software to Beverly Murray, the team leader for BPR 1. Zaccari later emailed a copy of his CRR Software application to Ms. Murray and some other members of the BPR 1 team so that they could further evaluate it. Zaccari did not expressly or impliedly license or otherwise give permission for anyone on the BPR 1 team to do anything other than evaluate the performance of his CRR Software. Upon observing Ms. Hitt making visual modifications to his software code days later, Zaccari instructed her to stop and specifically requested that she not make any further modifications to the software code or his CRR Software application without his express, prior permission.

19. On or about June 27, 2016, Zaccari demonstrated his CRR Software to DCMA's Deputy Director, Marie Greening. DCMA IT Leader, Jake Haynes, and IWMS Program Lead, Antoine McNeil, also participated in the demonstration via teleconference.

20. Mr. McNeil subsequently contacted Apprio's Executive Vice President, Kevin Mesiah, and asserted, without any basis, that Zaccari's development of his CRR Software was a

serious task order violation, threatened to report Zaccari to DCMA's Director, General Wendy Masiello, and demanded a copy of the application. Concerned that Mr. McNeil's assertions may jeopardize Apprio's contract with DCMA, Apprio's leadership directed Zaccari to give the source code for his CRR Software to Mr. McNeil without any consideration for Zaccari's exclusive ownership or rights. Apprio's leadership then directed Zaccari to give a copy of his CRR Software application to the entire BPR 1 team without any consideration for Zaccari's exclusive ownership or rights.

21. Zaccari was never directed in writing, or provided prior written consent from an authorized officer of Apprio, to either incorporate his CRR Software, or permit it to be incorporated, into Apprio work product for DCMA.

22. The BPR 1 team subsequently removed Zaccari's name as the author on the CRR Software and renamed the application as ConCISE. Screen shots of the properties page for his CRR Software application and ConCISE are attached as Exhibit 2. It is clear that the create date for both is May 19, 2016, and that Zaccari's name as author has been replaced with Ms. Hitt and Matthew Melason. Zaccari did not participate in, suggest, or condone any of these actions. These acts were done without Zaccari's express or implied authorization.

23. Mr. McNeil also subsequently collaborated with DT to copy Zaccari's CRR Software and prepare a derivative work that uses some or all of the source code in Zaccari's CRR Software to automate the contract receipt and review process in IWMS. None of these acts were done with Zaccari's express or implied authorization.

24. In June 2016 it was estimated that Zaccari's CRR Software would save DCMA $42,000,000 annually. During the June 27, 2016 demonstration, however, Ms. Greening stated that the initial estimated savings was too low.

25. In August 2016, Mr. McNeil announced DCMA and DT would be working on the development of an alternative to ConCISE for the IWMS. S5121A-13-A-0008 is a $31.8 million contract for DT (the "DT Contract") to develop the IWMS business process management software for DCMA. The IWMS alternative application was deployed in December 2016 but failed to perform as expected. Within months the development of this application was terminated. Zaccari did not participate in, suggest, or condone any of these actions.

26. In August 2016, DCMA also shared copies of Zaccari's CRR Software with other DoD agencies, including, but not limited to, Defense Finance and Accounting Services.

27. Zaccari repeatedly requested that Apprio confront DCMA about the unauthorized use of his CRR Software. Zaccari's requests were either ignored or disregarded by Ms. Coelho, who treated Zaccari's CRR Software as if it was part of Apprio's work product for DCMA.

28. In February 2017, DCMA moves forward with implementing a version of ConCISE that is substantially similar to Zaccari's CRR Software. Zaccari was not involved with any testing or modifications to ConCISE, and did not authorize the creation of any derivative work of his CRR Software.

29. In mid-March 2017, Major Pottratz claimed that ConCISE would only save DCMA about half of the initial estimated annual savings.

30. About this same time, DCMA discovers that there has been a $70.3 million overspend for Information Technology (IT) services. In addition, Zaccari and all contractors ceased working at DCMA and Apprio's contract with DCMA was terminated.

31. The misappropriation of over $70 million triggered an investigation by the DoD Office of the Inspector General. The findings of this investigation where published in April 2018

(DODIG-2018-110) (the "Report"), a copy of which is attached as Exhibit 3. The DCMA Director agreed with the findings and recommendations in the Report.

32. The Report specifically identifies the DT Contract as being one of many that violated relevant FAR requirements. Report p.21, n.37. The Report also states that at least 15 invoices submitted under the DT Contract were not properly approved[3] and valued at almost $5 million. *Id.* at p.21, Table 3.

33. Zaccari repeatedly advised his manager at Apprio that he was the sole owner and author of his CRR Software, and repeatedly requested that Apprio notify DCMA of the same.

34. Apprio neither billed DCMA for Zaccari's time developing and writing his CRR Software nor paid Zaccari for the same. DT, however, submitted invoices to DCMA while it used Zaccari's CRR Software without his authorization.

35. Zaccari and Sink ceased working for Apprio on May 12, 2017, due to the termination of its contract with DCMA.

36. In June 2017, DCMA deployed ConCISE to 9,000 employees without Zaccari's express or implied authorization.

37. Remarkably, in a press release dated June 8, 2017, DCMA falsely claimed that ConCISE was purportedly prepared by "a team of seasoned acquisition professionals – the Business Process Re-engineering 1: Contract Receipt and Review. After feedback from the field identified a need for standardization and improved capabilities, the BPR 1 Team went to work." Major Pottratz is quoted in the press release claiming:

> The contract receipt and review team realized our agency needed a tool that could scan through the text of our contracts and highlight key requirements[.] . . . Over

---

[3] "An invoice is not properly approved when the invoice does not have the required elements and there is no evidence of satisfactory contractor performance." Report p.21, Table 3, n.2.

> the past two years the team compiled a list of 1,300 key clauses and text phrases. To test our theory, we created ConCISE.
>
> . . . this product has the capability to save our agency thousands of labor hours, but most importantly, increase our accuracy of contract requirement identification.

A copy of the press release is attached as <u>Exhibit 4</u>. There is no mention of Zaccari.

38. DCMA has issued several other press releases touting the success of ConCISE.

<u>**COUNT I**</u>
**(COPYRIGHT INFRINGEMENT)**

39. Zaccari repeats and incorporates the allegations of paragraphs 1 through 38 as if set forth herein.

40. As identified in the Certificate of Registration attached as <u>Exhibit 1</u>, Zaccari authored and owns his CRR Software, which is protected under the copyright laws of the United States.

41. At all relevant times, Zaccari has maintained that he is the sole author and owner of his CRR Software.

42. Without Zaccari's authorization, DCMA and its agents:

    a. made copies of Zaccari's CRR Software by deploying it to at least 9,000 employees and testing it in multiple offices;

    b. prepared at least two derivative works based on Zaccari's CRR Software, ConCISE and the IWMS alternative application;

    c. distributed copies of Zaccari's CRR Software to DT; and

    d. continue to use Zaccari's CRR Software or derivative works thereof without a license.

43. Zaccari's CRR Software was not developed, written, or tested as part of his position as a consultant to the PMO or to the IWMS Program Office, or within the type of work he was

9

called to perform, control, or supervise for DCMA. Zaccari was not involved with any testing, implementation, further development, or use of either his CRR Software or any derivative work thereof by DCMA or DT.

44. DCMA and DT willfully directly infringed Zaccari's exclusive rights in and to his CRR Software under the Copyright Act, 17 U.S.C. § 106, by copying, installing, and using it, and derivative works thereof, without Zaccari's authorization or license.

45. DT had knowledge of the direct infringement by DCMA, and induced, caused, or materially contributed to the infringement by participating in the testing, implementation, further development, or use of either Zaccari's CRR Software or any derivative work thereof.

46. Zaccari has been damaged by the willful, direct and indirect infringement of his CRR Software by DCMA and DT as alleged above and is entitled to recover for such infringement pursuant to 17 U.S.C. § 504.

47. Zaccari, pursuant to 17 U.S.C. § 505, seeks treble damages and his attorneys' fees and costs because the willful, direct and indirect infringement of the exclusive rights of Zaccari in and to his CRR Software and any derivative thereof by DMCA and DT.

## COUNT II
### (STATUTORY BUSINESS CONSPIRACY)

48. Zaccari repeats and incorporates the allegations of paragraphs 1 through 47 as if set forth herein.

49. DCMA and DT, by and through their respective agents, while attempting to develop an alternative to Zaccari's CRR Software, joined together for the purpose of willfully and maliciously injuring Zaccari by directly and indirectly infringing his CRR Software as alleged above.

50. DT's actions constitute legal malice and a violation of Va. Code § 18.2-499(A).

51. Zaccari has been damaged by DT's unlawful conspiracy to infringe his copyrights without compensation or recognition of his exclusive rights in and to his CRR Software as alleged above and is entitled to an award for enhanced damages and his attorneys' fees and costs pursuant to Va. Code § 18.2-500(A).

52. Va. Code § 18.2-500(B) permits this Court to enjoin DT, both temporarily and permanently, from using or possessing Zaccari's CRR Software, or any derivative thereof, and to direct Apprio to either purchase licenses of Zaccari's CRR Software or destroy any copies of it, and any derivatives thereof, in DT's possession, custody, or control.

### COUNT III
### (MISAPPROPRIATION OF TRADE SECRET)

53. Zaccari repeats and incorporates the allegations of paragraphs 1 through 52 as if set forth herein.

54. In the alternative, DT unlawfully obtained a copy of and used Zaccari's CRR Software without his authorization in June of 2016.

55. Zaccari's CRR Software was created and stored on Zaccari's password protected, personal computer. Zaccari has taken reasonable measures to keep the source code of the CRR Software secret and has not published it to the public. Opening the application and using Zaccari's CRR Software does not reveal the source code of the CRR Software. Thus, Zaccari's demonstrations did not reveal the source code of his CRR Software.

56. As evidenced by the attempt of DCMA and DT to recreate it, the source code of Zaccari's CRR Software has economic value from not being generally known, and unless acquired with Zaccari authorization, is not readily ascertainable through proper means. The source code of Zaccari's CRR Software is related to a service intended for use in interstate commerce, namely the

automated review of government contracts. The source code of Zaccari's CRR Software constitutes a trade secret protected from misappropriation by 18 U.S.C. § 1836(b)(1).

57. DT acquired the software application containing the source code of Zaccari's CRR Software in June 2016 through improper means because DCMA was not authorized to share or use Zaccari's CRR Software without his consent or any consideration for his exclusive ownership and rights in the trade secret.

58. Zaccari has been damaged by DT's misappropriation and unauthorized use of the source code for his CRR Software as alleged above and is entitled to injunctive relief and an award for damages pursuant to 18 U.S.C. §§ 1836(b)(3)(A) and (B).

59. Zaccari, pursuant to 18 U.S.C. §§ 1836(b)(3)(C), further seeks enhanced damages and his attorneys' fees and costs because DT willfully and maliciously misappropriated the source code for his CRR Software.

## PRAYER FOR RELIEF

WHEREFORE, Zaccari prays that this Court enter judgment in his favor and against Apprio as follows:

A. Finding Zaccari owns a valid copyright in his CRR Software and that DT willfully, directly and indirectly infringed Zaccari's exclusive rights in and to it;

B. Finding DT conspired with DCMA to use Zaccari's CRR Software without authorization;

C. Awarding Zaccari $63,000,000.00 in actual damages;

D. Awarding Zaccari treble damages and his attorneys' fees and costs for such willful infringement;

E.	Enjoining DT both temporarily and permanently from directly or indirectly infringing Zaccari's exclusive rights in and to his CRR Software;

F.	Ordering DT to either purchase licenses of Zaccari's CRR Software or destroy any copies of it, and any derivatives thereof, in DT's possession, custody, or control;

G.	In the alternative, pursuant to 18 U.S.C.§§ 1836, *et seq.*, finding the source code for Zaccari's CRR Software is a protectable trade secret that it was willfully and maliciously misappropriated by DT by improper means, enjoining DT from continuing to use it, and awarding Zaccari $63,000,000.00 in damages, and enhanced damages and his attorneys' fees and costs for such willful and malicious misappropriation; and

H.	Granting Zaccari such other and further relief as the law allows or as the Court deems just and equitable according to the circumstances.

Date:  June 29, 2018	Respectfully submitted,

NEIL ZACCARI

	/s/James B. Thorsen
James B. Thorsen (VSB No. 18113)
jthorsen@thorsenallen.com
Robert D. Michaux (VSB No. 80701)
rmichaux@thorsenallen.com
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
Richmond, Virginia  23226
(T) 804-447-7234
(F) 804-447-7813

Kirk T. Schroder (VSB No. 27469)
kschroder@schroderdavis.com
SCHRODER BROOKS PLC
2310 West Main Street, Suite 108
Richmond, Virginia  23220
(T) 804-510-0700
(F) 804-510-0707

*Counsel for Plaintiff*

13