FILED
DEC 28 2018
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NEIL ZACCARI, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:18-CV-453-HEH
)
DISCOVER TECHNOLOGIES LLC, )
)
)
Defendant. )

## MEMORANDUM OPINION
(Granting in Part Defendant's Motion to Dismiss)

This case involves a business-process consultant suing a government contractor for the alleged infringement of copyrighted software. According to Plaintiff Neil Zaccari ("Plaintiff"), Defendant Discover Technologies, LLC's ("Defendant") infringement occurred in collaboration with the United States government. (Compl. ¶ 23, ECF No. 1.) Plaintiff alleges that Defendant engaged in copyright infringement, statutory business conspiracy under Virginia law, and misappropriation of a trade secret. (Id. ¶¶ 39–59.)

This matter is presently before the Court on Defendant's Motion to Dismiss (ECF No. 9). Both parties have filed memoranda supporting their respective positions, and the Court heard argument on November 26, 2018. Upon due consideration of the parties' arguments, and for the reasons that follow, the Court will dismiss Count I for lack of subject-matter jurisdiction and grant in part Defendant's Motion to Dismiss with respect to Count II. Count III survives Defendant's challenge.

## I. BACKGROUND

According to the Complaint, Plaintiff contracted his consulting services with the United States government through his former employer, Apprio. (*Id.* ¶ 13.) Plaintiff was tasked with improving the Defense Contract Management Agency's ("DCMA") business processes. (*Id.*) DCMA is an arm of the Department of Defense ("DoD") that works with defense contractors and suppliers to manage compliance with contractual and federal requirements for services and supplies delivered to DoD. (*Id.* ¶ 11.)

While Plaintiff was contracted to work on certain DCMA business processes, a separate effort was underway by a DCMA project team called "BPR 1" to address inefficiencies in DCMA's contract review processes. (*Id.* ¶ 14.) Plaintiff was not assigned to that project team. (*Id.*) Nevertheless, independent of his contracted responsibilities, Plaintiff alleges that he developed computer software (the "Software") that automated government defense contract reviews that were performed manually by DCMA at the time. (*Id.* ¶ 16.) The Software was designed to streamline review of Federal Acquisitions Requirements, potentially saving the government millions of dollars. (*Id.* ¶¶ 16, 24.)

On May 31, 2016, Plaintiff alleges that he demonstrated the Software to Apprio Vice President, Michelle Coelho, and another Apprio employee. (*Id.* ¶ 17.) Coelho then allegedly directed Plaintiff to do a similar demonstration of the Software for the BPR 1 team. (*Id.*) Plaintiff did so and sent a copy of the Software to the team for evaluation. After doing so, he requested that the team "not make any further modifications to the software code or his [Software] without his express, prior permission." (*Id.* ¶¶ 17–18.)

2

Upon demonstrating the capabilities of the Software to Apprio and DCMA employees, Plaintiff alleges that a program lead within DCMA, Antoine McNeil, informed an Apprio executive that the Software was beyond the scope of Plaintiff's contracted services for DCMA. (*Id.* ¶¶ 19–20.) McNeil then demanded a copy of the Software. (*Id.* ¶ 20.) In response, the Complaint alleges that Apprio directed Plaintiff to provide copies of the Software and its source code to DCMA. (*Id.*)

Thereafter, the Complaint alleges that the BPR 1 team "removed [Plaintiff's] name as author on the [] Software and renamed the application ConCISE." (*Id.* ¶ 22.) Further, Plaintiff alleges that McNeil "subsequently collaborated with [Defendant] to copy [the Software] and prepare a derivative work that uses some or all of the source code in [the Software] to automate the contract receipt and review process . . . ." (*Id.* ¶ 23.) ConCISE was later allegedly deployed to thousands of government employees, as well as shared with other DoD agencies. (*Id.* ¶¶ 25–26, 36.)

On April 23, 2018, Plaintiff filed an application for Copyright Registration of his software with the U.S. Copyright Office, which was subsequently accepted. (*Id.* ¶ 10.)

Plaintiff raises three claims against Defendant. Count I alleges copyright infringement under 17 U.S.C. §§ 504–05, seeking treble damages and attorney's fees for direct and indirect infringement of Plaintiff's copyright. (*Id.* ¶¶ 39–47.) Count II alleges statutory business conspiracy in violation of Va. Code § 18.2-499(A). (*Id.* ¶¶ 48–52.) Count III alleges misappropriation of trade secret under 18 U.S.C. § 1836(b)(1). (*Id.* ¶¶ 53–59.) Plaintiff seeks $63,000,000 in actual damages, statutory treble damages and attorney's fees, and injunctive relief. (*Id.* at 12–13.) Defendant's Motion to Dismiss

3

seeks dismissal of Counts II and III in their entirety, as well as Plaintiff's request for statutory damages under Count I.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

Finally, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

## III. ANALYSIS

For the reasons that follow, Defendant's Motion to Dismiss is granted in part. Count I is dismissed because this Court lacks subject-matter jurisdiction to decide the claim. Count II is dismissed because the claim is preempted by the Copyright Act. Count III survives because Plaintiff states a plausible claim for misappropriation of trade secret. The Court will analyze each count in turn.

First, Plaintiff's claim for copyright infringement (Count I) fails because this Court lacks jurisdiction to decide the issue. The Court has an obligation to ensure that it has jurisdiction to hear the claims before it. Although the issue of subject-matter jurisdiction was addressed only during oral argument and in supplemental briefing, the Court may raise that issue *sua sponte* at any stage. *See Arbaugh*, 546 U.S. at 506.

Under 28 U.S.C. § 1498(b), Congress waived sovereign immunity for copyright infringement claims against the United States government. *See Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 342–45 (1928) (detailing the historical development of 28 U.S.C. § 1498). The waiver provides that when the United States has infringed any work copyrighted under United States copyright law, "the *exclusive action* which may be

brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement . . . ." 28 U.S.C. § 1498(b) (emphasis added). Importantly, this statutory restriction extends to "a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government" who has infringed upon the copyrighted work. *Id.*

Construction of § 1498(b) has historically coincided with interpretation of its similar, yet distinct, "sister provision" dealing with patent infringement, § 1498(a). *See, e.g., Auerbach v. Sverdrup Corp.*, 829 F.2d 175, 179–80 (D.C. Cir. 1987).

As a preliminary matter, this Court finds that § 1498(b) establishes a jurisdictional bar to district courts deciding claims against private parties for copyright infringement that fall within the ambit of that statute. In the absence of explicit statutory language, courts have disagreed as to whether § 1498 creates a jurisdictional bar or merely an affirmative defense. *Compare Croydon Co., Inc. v. Unique Furnishings, Ltd.*, 831 F. Supp. 480, 486 (E.D.N.C. 1993) (finding that § 1498(b) created a jurisdictional bar), *and Herbert v. National Academy of Sciences*, 974 F.2d 192, 196–97 (D.C. Cir. 1992) (noting "The question of whether § 1498(b) is only an affirmative defense is not itself free from doubt."), *with Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554–55 (Fed. Cir. 1990) (finding that §1498(a) established an affirmative defense).

A panel of the Federal Circuit concluded that § 1498 serves merely to create an affirmative defense for private parties accused of infringement on behalf of the government. *See Manville Sales Corp.*, 917 F.2d at 554–55 (basing the decision with

respect to § 1498(a) solely on its interpretation of the United States Supreme Court's decision in *Sperry Gyroscope Co. v. Arma Engineering Co.*, 271 U.S. 232 (1926)). In reference to the Federal Circuit's determination in *Manville*, however, Judge Sentelle of the D.C. Circuit noted the following in *Herbert*:

> [A] pair of post-*Sperry* decisions suggest a different view. In *Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 137–39, 67 S.Ct. 231, 234–35, 91 L.Ed. 128 (1946), the Supreme Court characterized a related statutory provision as jurisdictional; this court also stated in *Auerbach v. Sverdrup Corp.*, 829 F.2d 175, 181 (D.C. Cir. 1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1075, 99 L.E.2d 234 (1988), that § 1498(b) "concerns a want of jurisdiction."

*Herbert*, 974 F.2d at 196 n.3. The Fourth Circuit has not decided this point; accordingly, this Court must reach its own determination.

Notably, Plaintiff advances the position that if the statute applies, it divests the Court of jurisdiction over the copyright infringement claim. (Pl.'s Supp. Br. 2, ECF No. 17.) This Court agrees. The plain language of § 1498(b) is clear. When an entity infringes a copyright while acting for and with the authorization of the United States government, "the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims . . . ." 28 U.S.C. § 1498(b). When the prerequisites for applicability of that statute are met, § 1498(b) provides for an *exclusive remedy* and no alternative. *Croydon*, 831 F. Supp. at 486 ("The language of [§ 1498(b)] does not contemplate any alternative to proceeding in the Court of Claims."). Accordingly, this Court construes § 1498(b) as

7

jurisdictional in nature. Plaintiff's copyright infringement claim is barred if the alleged facts satisfy the statutory prerequisites and the statute applies.

The limitation in § 1498(b) applies to Plaintiff's copyright infringement claim if Defendant acted "for the Government and with the authorization or consent of the Government . . . ." 28 U.S.C. § 1498(b). To demonstrate action for and with the authorization or consent of the government, "[o]bviously, express documentary evidence will do, which typically will consist of a contractual clause setting forth the government's assumption of liability." *Auerbach*, 829 F.2d at 180. However, "[e]vidence probative of implied consent or authorization can also be submitted to the trier of fact for evaluation of its sufficiency." *Id.* The Fourth Circuit has explained:

> '[a]uthorization or consent' on the part of the Government may be given in many ways other than by letter or other direct form of communication. . . . the specifications and the contract may be silent with respect to the use of patented inventions. In such event, if the invention for which claim is made is incorporated in the articles delivered to the United States under the terms of the contract, the acceptance of such articles as complying with the terms of the contract, constitutes 'consent' by the Government sufficient to bring the articles within the provisions of [§ 1498] . . . .

*Bereslavsky v. Esso Standard Oil Co.*, 175 F. 2d 148, 151 (4th Cir. 1949) (analyzing authorization or consent under § 1498(a)).

There is no dispute that Defendant was a government contractor at the time of the alleged infringement. (Pl.'s Suppl. Br. 2.) Plaintiff contends that § 1498(b) does not apply to his copyright infringement claim, however, because the facts, as alleged, do not

8

"infer" that Defendant was acting for and with the authorization or consent of the United States when it infringed Plaintiff's copyright. *Id.*

Plaintiff's position is incongruous with his alleged facts, as it stands opposite to the narrative presented in the Complaint. According to the Complaint, Plaintiff demonstrated his software to DCMA leadership, who ultimately demanded copies of the Software and its source code. (Compl. ¶¶ 19–20.) The Complaint then describes alleged actions by the government before referring to Defendant's role in the scheme. Plaintiff alleges that a DCMA project team, BPR 1, renamed the Software for its own use, and, later, that DCMA collaborated with Defendant to attempt to create a similar application. (*Id.* ¶ 22–23, 25.) Having failed to do so, a substantially similar version of the Software was allegedly deployed to thousands of government employees. (*Id.* ¶¶ 28, 36.) Thus, as described in the Complaint, the alleged infringement not only occurred under the government's authorization or consent, it was performed *by the government* with support from Defendant.

Plaintiff would have this Court find that an express statement of authorization or consent is required on behalf of the government in order for the statute to apply. As the Fourth Circuit noted to the contrary with respect to § 1498(a), "[t]o limit the application of the statute to cases where officers of the government intentionally contract for patent infringement would in very large measure defeat its purpose." *Bereslavsky*, 175 F.2d at 150. The same principle applies here, although authorization and consent need not be implied. Here, the alleged conduct by the government extends well beyond the mere acceptance of goods from a contractor. *See, e.g., Jetform Corp. v. Unisys Corp.*, 11

F.Supp.2d 788, 791–92 (E.D. Va. 1998) (finding that § 1498(b) did not apply because the alleged facts did not support authorization or consent by the government when it merely accepted goods delivered pursuant to a contract or by specifying the goods to be delivered). According to the Complaint, the government was the primary infringer.

Plaintiff points to a report by the Department of Defense Office of the Inspector General detailing an overspend on IT services by DCMA, including those provided by Defendant, to argue that it was not acting with the government's authorization or consent. (Pl.'s Suppl. Br. 4.) Whatever relevance this report has to the initiative at issue in this case, it does not negate the allegations of infringement by government actors. Further, Plaintiff's argument that § 1498(b) does not apply to its claim for indirect infringement is equally unavailing. *See Astornet Technologies Inc. v. BAE Systems, Inc.*, 802 F.3d 1271, 1277–78 (Fed. Cir. 2015) (affirming the dismissal of indirect patent infringement claims against non-government defendants under § 1498(a) where direct infringement was performed by the government).

The record at hand clearly establishes that Defendant was acting for and with the authorization or consent of the government when it infringed Defendant's copyright. Accordingly, § 1498(b) limits Plaintiff's remedy to a claim against the United States in the United States Court of Federal Claims. Plaintiff's copyright infringement claim will therefore be dismissed.

Second, Plaintiff's claim for statutory business conspiracy under Va. Code § 18.2-499(A) (Count II) founders because the claim is subsumed by the Copyright Act. "Federal Copyright Act preemption is 'broad and absolute.'" *OpenRisk, LLC v.*

*Microstrategy Servs. Corp.*, 876 F.3d 518, 523 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1575 (2018) (citing *U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1464 (4th Cir. 1997)). In pertinent part, the Copyright Act states as follows:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title . . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C.A. § 301(a). The Fourth Circuit utilizes a two-part test to determine whether a claim is preempted by the Copyright Act. A claim is preempted if "(1) [] the claim 'falls within the subject matter of copyright' and (2) [] the claim 'protects rights that are equivalent to any of the exclusive rights of a federal copyright.'" *Tire Eng'g and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 309 (4th Cir. 2012) (citing *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003)).

The first prong of the test is satisfied in the current case because software "clearly comes within the 'subject-matter' of copyright." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993). Neither party disputes this point. (Def.'s Mem. Supp. Mot. to Dismiss 5, ECF No. 10; Pl.'s Resp. Mot. to Dismiss 3, ECF No. 11.)

The second facet is also satisfied because the core of the statutory business conspiracy claim is not qualitatively different than a copyright infringement claim. *See Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229–30 (4th Cir. 1993). According to the Fourth Circuit, the second prerequisite requires an analysis of the state-law claim's

11

elements in search of an "extra element." *Id.* If the state-law claim requires an element beyond that which is required to infringe rights protected by the Copyright Act, it escapes preemption. *Id.* Importantly, the extra element must change the nature of the claim, rendering it qualitatively different than a copyright infringement claim. *Id.* at 230. If the state-law claim includes no such "extra element," the claim is preempted by the Copyright Act. *Id.* at 229.

Plaintiff's Statutory Business Conspiracy claim does not include the necessary "extra element." The elements for the claim are "(1) concerted action between two or more people; (2) legal malice towards Plaintiff's business; and (3) that the conspiratorial actions caused Plaintiff's business damages." *Rogers v. Deane*, 992 F.Supp.2d 621, 635 (E.D. Va. 2014) (citing *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526–27 (4th Cir. 1997)). Plaintiff contends that these elements are not equivalent to copyright infringement. (Pl.'s Resp. Mot. to Dismiss 5.)

With respect to the first element, the Supreme Court of Virginia has stated that "actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E. 2d 313, 317 (Va. 2014). In this case, the alleged wrongful act is copyright infringement. (Compl. ¶ 51.) The fact that multiple parties allegedly engaged in copyright infringement does not change the nature of the claim. *See Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007) ("'The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish

12

an unlawful purpose or use an unlawful means.'" (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281–82 (Va. 1993))).

The additional requirement of malice does not change the nature of the claim either. As the Fourth Circuit has made clear, "'[a]n action will not be saved from preemption by elements such as awareness or *intent*, which alter 'the action's scope but not its nature.'" *Rosciszewski*, 1 F.3d at 230 (emphasis added) (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 717 (2nd Cir. 1992)).

Without the necessary "extra element," the core of Plaintiff's statutory business conspiracy claim is equivalent to its copyright infringement claim. *See Tire Eng'g and Distribution, LLC*, 682 F.3d at 312 (concluding that "the additional elements required to prove conspiracy to infringe copyrights are not sufficient to escape the Copyright Act's ambit of preemption."). Accordingly, Count II is preempted by the Copyright Act and will be dismissed.

Finally, Plaintiff's misappropriation of trade secret claim (Count III) survives because Plaintiff has stated a plausible claim. Plaintiff's allegation is that Defendant misappropriated source code from his software. (Compl. ¶ 58.) Defendant contends that Plaintiff has not pleaded facts "to support a finding that [Defendant] would have been able to access the source code" because the Complaint states that "[o]pening the application and using [the Software] does not reveal the source code of the [] Software." (Def.'s Mem. Supp. Mot. to Dismiss 8; Compl. ¶ 55.) This argument raises factual questions that extend beyond the Complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 439 (4th Cir. 2011). Plaintiff has alleged that by

obtaining his Software, Defendant was able to access the source code, as evidenced by its attempt to recreate it. (Compl. ¶¶ 56–58.) The Court finds this allegation plausible on its face, and, accordingly, Count III survives Defendant's challenge at this stage.

For the aforementioned reasons, the Court finds that it lacks subject-matter jurisdiction to entertain Count I, which is therefore dismissed. Defendant's Motion to Dismiss is granted as to Count II and denied with respect to Count III. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 28 2018
Richmond, Virginia